May I please the court? I am Ina Lipkin on behalf of the petitioner. And this is a case denied by the Board of Appeals in immigration matter. The board had cited matter of Burbono and did not really give any separate reasoning for its denial. Therefore, the immigration judge's decision is the one that the court should be reviewing. Here, the judge denied the petitioner's matter based on credibility. And on that basis, the board has found that the petitioner did not meet the statutory requirements for filing his petition within one year. And I'd like to address this topic first. The underlining basis for his denial was improper. He essentially denied the petitioner his due process rights by relying on notes made by an asylum officer that were handwritten and difficult to read, only four or five pages long. The asylum officer was not called as a witness and available for cross-examination. And there was no evidence that the asylum officer had asked the petitioner the kind of questions that this court had cited in Singh v. Gonzalez, and the site is in the brief, to see if the questions he asked, was there anything else he wanted to add at the end of the asylum interview, or those other kinds of procedural requirements the court had mentioned. You're mixing two arguments here. Let me make sure I follow where you're going. I think your first argument is that it's improper to consider as impeachment evidence the handwritten notes of the asylum officer because he wasn't there himself to explain those notes and to be cross-examined. Is that? That's that part of the argument. Yes. asylum interview could go awry in that the asylum officer is not a judge, and if there's no showing in the notes or the asylum officer is not present for cross-examination, to ask them, did you, the asylum officer, ask the petitioner at the end of the interview? Is there anything else you want to add or anything you want to correct? My question, again, about your argument is for purposes of assessing the credibility of the petitioner at the hearing, what is the distinction between the asylum officer's contemporaneous interview notes and any other document that the immigration court might have before it that could be relied upon for purposes of assessing credibility? Well, in an immigration court context, you just have the petitioner's testimony, any documentary proofs he might present, and the government, as you said, for impeachment might present the notes and the asylum officer. Maybe you're not understanding my question. Maybe I'm not asking it very well. For purposes of assessing credibility, what's different about notes of an interview versus the consideration of any other documentary evidence that the court may have before it in terms of weighing the truthfulness of the testimony of the witness? Do you understand my question? I do understand. In this particular case, on the administrative record, page 128, the judge asks a very convoluted compound question where he asks the petitioner, didn't you tell the asylum officer you entered January 2002 rather than 2003? And later he says, and didn't you say you were confused? The petitioner answers, yes, I was confused. Later on that same page, he, the judge asks the petitioner, didn't you say that you started living in Elk Grove, California in February of 2002 rather than 2003, like on the declaration? And the petitioner refutes it. He says, no, I did not. So to answer your question, no, I never said that. So in order to answer your question, since the petitioner is refuting what he allegedly said to the asylum officer, you have to have the asylum officer present for cross-examination to explain those notes. You can't just take them at face value. So what are you relying on for that proposition? Because I don't, again, going back to my original question, I don't understand what is different about having the note as an impeaching document in any other document that might contain information which is potentially impeaching. In other words, you can't call a document, a document contains whatever information it contains. The finder of fact in every other proceeding can consider the content of that document and give it whatever weight it deserves. And why should the rule be different if we're looking at the contemporaneous notes of the asylum officer? Well, because this court has held that an asylum interview is a quasi-judicial setting. And therefore, if the asylum officer is available, which presumably he would have been, it was a San Francisco asylum officer, and he's available to clarify or explain, this isn't necessarily a business record because, again, it's a quasi-setting, handwritten notes, now they're easy to read. He should be able to clarify them. for whatever impeachment value it may have. I guess what you're really arguing to us is you would like us to declare a new rule of due process, that in the instance where the notes of the contemporaneous notes of the asylum interview are being offered for impeachment purposes, the government must also produce the asylum officer for purposes of confrontation. But, Your Honor, this Court has already stated in Singh v. Gonzalez, the 2005 case, that where the government introduces the asylum officer notes and the assessment to refer, and the asylum officer is available, he should be called forth and subject to cross-examination, especially if the Petitioner refutes his statements. I've got a different question, and that is, did you make this argument in your brief? The Singh v. Gonzalez case was brought up in the Petitioner's brief, Your Honor. Did you make this argument that the asylum officer should have been brought into the asylum hearing in your brief? I believe so. If I have a moment to check that, and I can confirm it. Well, Your Honor, Mr. Graywell, who wrote the brief on page 10, cited Singh v. Gonzalez. He did not articulate that the asylum officer should have been available for cross-examination. However, he did note that reliability of an asylum officer's assessment standing alone, with the inference that it would be nice if he was available for cross-examination, is insufficient evidence to support adverse credibility finding. You know, you did not write this brief. You might wish to communicate with Mr. Graywell that there are various formalities about this brief that are missing, and I'm sure you recognized this as you started to prepare for the argument. Yes, Your Honor. Is there some reason why he didn't, why he's not here? I don't know. He contacted me to, you know, do the oral argument before the Court. Although I do want to reserve some time, I just want to state one more thing. Because the underlining reasoning of the IJ was improper, you know, the reliance on the asylum officer's notes, then his finding that the petition was incredible regarding the one-year issue is erroneous, and it's the kind of discretionary decision that this Court does have jurisdiction over under U.S.C. 1252a2b that the Court does preserve jurisdiction to review these kind of constitutional claims where the petitioner argues that due process was denied. Thank you. We'll make sure you have enough time for rebuttal, so don't worry. Let me ask you a related question. Was this argument about the asylum officer should have been there made in front of the IJ or made to the BIA? Are you asking where it should have been made? I'm sorry. I'm asking you the argument that you're now making, that the immigration officer whose notes were used, that the argument that that immigration officer should have been present to testify in front of the IJ, was that argument made to the IJ and was that argument made to the BIA? I don't know if this IJ allowed. I did represent this petitioner before the IJ, and I don't believe that IJ allowed arguments at the end of direct and cross-examination, but it was brought up before the BIA. If you give me a minute, I'll try to find that in the record. Okay. Thank you. And we'll make sure you get a chance to rebut. Good morning, and may it please the Court. My name is Jessie Liu, and I am here to represent the Respondent, the Attorney General Michael Mukasey. This Court should dismiss the petition for asylum for lack of jurisdiction and deny withholding of removal and the Convention Against Torture claims. First, I'd like to address the jurisdictional issue. As we explained in our brief, the IJ found that Mr. Singh did not file a timely asylum application insofar as he could not show by clear and convincing evidence that he had filed his application for asylum within one year of his last entry into the United States. The statute provides that no court shall have jurisdiction to review the agency's timeliness determination. That is not affected by the Real ID Act, which restored jurisdiction over constitutional claims and questions of law, or by this Court's recent decision in Ramadan, which determined that the courts here do have jurisdiction to review mixed questions of law and fact, that is to say the application of law to undisputed facts. The IJ's determination, with which the Board agreed, was a question of pure fact, whether or not the petitioner entered the United States in January of 2003, as he stated at his hearing, or whether he entered in January of 2002, which would have made his application time-barred. What do you do with the argument that may possibly be characterized as a constitutional due process argument that in making this determination, the IJ relied on the notes of the immigration officer, but should not have done so if that immigration officer was available to testify? Your Honor, I don't think that issue presents a constitutional question, and here's why. Ms. Lipkin talked to you quite a bit about Singh v. Gonzales, which is probably the most extensive discussion that this Court has had on the question of whether or not the IJ could rely on an assessment to refer. And in that case, this Court said that there were a number of reasons why the IJ in that case  And some of those reasons were the applicant himself was never asked by the IJ about the potential inconsistencies between what the asylum officer said he said and what he was then saying in his testimony. In addition, the Court pointed out that there were no detailed contemporaneous notes of the conversation between the asylum officer and the petitioner, and there was no interpreter. So for all of those reasons, the Court in the earlier Singh case determined that there was a problem with relying on the assessment to refer to impeach the petitioner's testimony. That's not the case here, and the most important thing that I'd like to point to is that there was really no need for the asylum officer to testify because the petitioner here was asked, did you tell the asylum officer that you entered the country in January of 2002? And he said, yes, I did. And I think that's on page 127. The question is, I'm now just reading the IJ's question. Sir, according to what I have, and I'm starting on 127, according to what I have in front of me, you were interviewed by an immigration officer in April of this year, and at that time you told, according to what I have in front of me, you told the immigration officer that you entered this country in January 2002. And according to what I have in front of me, the immigration officer said to you that, well, your application says you entered January 2003, and so why the difference in the date? And you answered to him that you had a bad memory. Is this true, sir? Yes, because I had a bad brain. Now, is that what you're referring to? Yes. That's not quite him saying, I told him that I entered in 2002. I mean, that's a compound question by the IJ. And the last part of the question that's asked by the IJ, and so why the difference in the dates, and you answered him that you had a bad memory, did, is this true? It sounds like he said, yes, I told him I had a bad memory. Well, I think it's arguable, Your Honor, whether or not he was saying, I told him all of this, and the explanation is that I, quote, unquote, had a bad brain, or whether he was, which part of the question he was answering, which just goes to say that we really shouldn't ask compound questions. But I just want to point out that later on that page, when the petitioner wants to explain that he didn't say something, he was very clear about doing that, because he was later asked, didn't you tell the immigration officer that you had been living at your current address since February of 2002? And he says very plainly, no, I didn't say that. And the IJ, in making his credibility determination, relied on the statement that he, the petitioner, had entered the country in 2002, but completely disregarded or did not rely on this claim that he had been living at his current address since February of 02. Okay. Passing the question, let's assume that we agree with you on the jurisdictional issue for the one-year bar. So we're now on withholding of removal. Why should we, and of course we have jurisdiction over that. Why should we deny the petition with respect to withholding of removal? Because the IJ found and the Board agreed that the petitioner had failed to testify credibly, and that credibility determination is something that should stand unless the record compels a conclusion to the contrary. So in your view, what supports the adverse credibility finding? The court's adverse credibility finding was based on a number of factors. And this Court has said that we need only have one as long as it's substantial and it goes to the heart of the claim. And the most substantial finding I would submit is the fact that the petitioner testified inconsistently as to the injuries that he received from one arrest to the other. When he filled out his application in written form, he said that he was arrested in April of 2001, and at that time his collarbone was broken and he received an injury to his left cheek. When he testified on direct examination, he said that in April of 2001, he rather in the application, he said he was hit on the forehead and the back of the head with sticks during the first arrest. And then in the second arrest, he had a broken collarbone and he was injured on his right cheek. The second time, well, when he testified on direct, he said that in April of 2001, this is the first arrest, he received a fracture on the left side of his shoulder and an injury to his cheek with a gun butt. And then during his second arrest in November in 2002, he was hit on the forehead and the back of the neck. And it's significant here that he's asked by his counsel several times to clarify exactly what injuries he had received. He was first asked to be mistreated in any other way during the second arrest in November of 2002, and he said he was hit on the forehead and the neck and then beaten with belts and sticks. He did not say anything about being injured in his shoulder or in his right cheek. He was then asked by his counsel whether he had any physical injuries when he was released after his second arrest, and he said that he had bleeding on his forehead and stayed in the hospital for three days. So he was very clearly testifying to essentially the opposite order of injuries that he had claimed in his written application. On cross-examination, the IJ asked him to explain the discrepancy, and his response on page 115 of the record was, quote, it happened twice. And so here we have a situation, as the IJ said, where the petitioner has told essentially three different stories about how he was injured. The two arrests and the injuries that he received during those arrests were the very heart of his basis for fear of persecution and past persecution, and so they go to the heart of his claim. I want to point this court to a few cases where the court has found upheld adverse credibility findings based on very similar facts, and they're all cited in our brief. One is the Powell case, P-A-L, involving a female petitioner who alleged rape as an act of persecution. She had a number of inconsistencies in how she described that act, including the date, where she lived at the time, what her husband's occupation at the time was, and the court said that the inconsistencies cast doubt on whether the incident occurred at all and therefore went to the heart of the claim. In that same case, the petitioner's husband alleged that his jaw had been broken and he vacillated about how and when he had received the jaw injury, and that's very similar to the kind of testimony that the petitioner in this case gave before the IJ, and once again this court upheld an adverse credibility finding in that case on those grounds. So for all of those reasons, the government asks that this Court dismiss the asylum petition for lack of jurisdiction and deny the withholding of removal and CAT claims.  Thank you. Thank you. Thank you very much. We'll give you a minute for rebuttal and see whether you can fit it in. We're still talking at the end of the minute. We'll keep talking. Okay. Your Honors, you asked me to see what was in the brief to the Board of Appeals. On page 10 of the record, although there's no reference to the same case because the brief was written in 2003 and predated that case, there is at the very last paragraph a reference that it's a de novo proceeding. What page are you on? 10, 10 of the administrative record. Okay. I'm on that page in front of me. Okay. So the last paragraph, it states, in fact, as the merits hearing is a de novo proceeding, the I.J. erred in giving respondents earlier testimony any weight. As a result, the I.J. erred in pre-terminating the claim. That didn't really sound like an argument. We should have had the immigration officer there. What do you respond to? Listen, that's not a constitutional question, and therefore we simply don't have any jurisdiction over it, given that it really goes to the one-year bar question. Well, earlier in the second large paragraph, the brief states, the I.J. based his findings on the asylum officer's assessment to a fur container Exhibit 8, in which the officer alleges respondents stated he entered January 2002. However, respondents explained his manner was sometimes bad and so forth. Though it's not articulated, I think there could be some argument that at least the petitioner brings forth the argument that the notes themselves should not have been relied upon. And, of course, the reason why is one of the reasons is because, A, he refuted the contents of it in that he stated, no, I never stated I lived in Elk Grove in 2002. And on the other hand, since the asylum officer could conceivably be brought forth as a witness and available, the I.J. should have given him that opportunity. That's that. In regards to the credibility issues, the petitioner's declaration when describing both arrests, though in each paragraph of the arrest does state certain details, the beginning also states, and I was badly beaten both times, which leaves the door open to other forms of beating he might have endured.  No, I think we've got that argument well in hand. All right. Thank you very much. Unless the bench has further questions? No. Okay. Thank you. Thank you. Thank both sides for their helpful argument in this case. The case of Singh v. Mukasey is now submitted for decision. The next case on the calendar is Side v. Mukasey has been referred to mediation. And the next case on the argument calendar is Babelwall & Associates v. University of Cambridge Local Examination Syndicate et al.
judges: Fletcher, Tallman, Dawson